Good morning. James Foss Finder, today appearing on behalf of the Hollins. The Hollins are in a position where time is obviously on the side of the county. And we allege that the law of the county and the state of Hawaii allows them to use that law in order to extend the period from making a final decision of an administrative agency essentially forever. The cost to the Hollins every month is very significant. The county had the property appraised at approximately $3 million. The carrying costs there are about $30,000 a month. They cannot sell the property. They cannot rent the property. They cannot borrow against it, nor can they refinance it. The county made sure of that because they filed a Liz pendants against the property. Counsel, there is no requirement in the ordinance that a decision be made within a certain period of time? There is no requirement that a decision be made before the sun burns out. Ever. Because in a lot of ordinances like that, if no statute is made, if no decision is made, it's deemed approved after a certain period of time. That's not the situation here. They have given themselves absolute power to take forever. The situation actually is far worse than it was at the time that Judge Gilmore wrote her order. The situation now is that we are, they said at the time of that initial hearing in front of Judge Gilmore that the hearing and the contested case would take place on three days in October of that year. That year was 2002. We are now almost two years later than that. So we are going, a few months from now, we are going to the fourth year of the county of Maui trying to make a final decision. Has there been a hearing on the contested issue? Well, that dragged out for about two years. Judge Mossman, the retired judge who was the hearing officer, had conflicts of schedule. Various things happened. But it is not yet to the point where it has been scheduled for a hearing in front of the planning commission. In theory, testimony is over. However, first of all, this is the first of two possible, not two possible, two scheduled contested case hearings. Even if we prevail in this one, the intervener gets to start it all up over again and have a whole other contested case hearing. And until that would be resolved, there would still be a Liz Pendens. They still couldn't live in the house necessarily. So just so I understand how the administrative process works, once you've gone before the hearing officer, Judge Mossman, what happens after that? He submits proposed findings of fact and law, which we have provided to you to take judicial notice of. To the planning commission? Yes, and then the planning commission can vote on it. However, during the contested case hearing, Ms. Dembele, who represented the county, made the point when Judge Mossman threw out some of the proposed testimony, she said to us, well, you should be careful because if you keep doing this, I have the right to go to the planning commission and say rather than deciding it, they should schedule more hearings in order to hear the evidence that I think should have been put in if they agree with me. So we aren't even, according to Madeline Dembele, who at that hearing said that it happened previously, we aren't even necessarily to the end of the initial round of hearings on the first contested case procedure, never mind the beginning of the second contested case procedure. This literally can go on forever. What can we do? What do we have the power to do in your view? Well, by you or the federal courts, I'm not sure. The federal courts have the power to say the system in the state of Hawaii does not grant sufficient procedural due process. In our complaint, we allege that there was no speedy, adequate remedy, and time has proven that to be far more true. It may have proven it in this one instance, but to make a blanket statement of that sort, don't we need more? Well, not in order for the Hollins to get damages. If the system that the state of Hawaii and the county of Maui has deprives them of a fundamental constitutional right, they're entitled to damages that result from that deprivation. So we don't have to have you or anybody decide. Well, on this record, there hasn't been a deprivation. There's been a delay, which you say is unreasonable. But there would have to be a finding, I suppose, that this delay is sufficient to be a deprivation. Yeah, the longest that any court has ever found reasonable, and even there it wasn't clear they were really making that as a ruling, was something like 120 days in a case out of Pennsylvania involving a pizza parlor that was turned into like a pool hall, and they claimed it was a health club. I mean, we're so far past that that there is no case law to the contrary. Clearly, we have a fundamental denial of due process. Additionally, there's another exemption to younger abstention, another exception to younger abstention, and that is where we allege, in a way that's not inherently incredible, that this was done out of malice. In our complaint, we say that this was done for the political benefit of the mayor, by the mayor, and time has proven us out on that, too. We now have a great deal of evidence. We have sworn testimony of a lawyer that the mayor told him that he was doing it essentially for political reasons, and that that was his motivation in doing it. We have the sworn testimony of a lawyer who represented the mayor at a meeting with another lawyer representing somebody else involved in this, where the lawyer for the county in his testimony acknowledged that the mayor said something to the effect of, if you don't give me this strip of land, what we really wanted was an exaction, a gift to the county of land along the ocean side of this property. The really sad thing here is that my client's part of this project, the apartment that they bought, doesn't even front on the wall along the ocean that was the issue. Literally, the Hollins problem arose because they couldn't force other people to do what the county wanted them to do. Would your damages be the interest you paid? Caring costs, yes. Anything else? Emotional distress. It's been extremely stressful for them. Essentially, the last two mayors- You'd have to prove that to the federal district judge. Of course. But we believe, to put it mildly, that we can do that. There is a 12B6 that this was thrown out on, and so the judge is supposed to view not only the complaint but any facts that might exist that were consistent with the complaint, and then only if nothing could possibly lead to our prevailing are they supposed to throw it out, and that just obviously wasn't the situation. We alleged that this was done for political reasons. We alleged that there was insufficient due process procedure to protect their rights in a speedy way, and we now have overwhelming evidence of this, but the judge was supposed to do it in the light most favorable to our clients, and I think that reading the record, it's clear that unfortunately she did not. Counsel, the district court dismissed the case on the basis of ripeness. Ripeness and younger abstention, yes. Did she do younger abstention? Yes. So are you taking issue with both of those? Yes, yes. Younger abstention, the exceptions are procedural due process. If the process just doesn't give you an adequate remedy, you're supposed to be able to go to federal court, and if the reason that this bad act happened was because of some illegal act or personal financial or political gain, you're also supposed to be able to go to federal court, and that's exactly what we alleged. What about the rightness issue? Well, the whole rightness issue is based on the theory that we were going to get a decision pretty soon, a final decision, but that's what I've been talking about. There is no final decision here necessarily ever. What case do you rely upon to say that there is an exception to the rightness doctrine if there is unwarranted delay? You'll have to give me a second. I think once again that we cited quite a few. Give me your best one. One second. Let me review if I could take my time. Maybe you can do that on rebuttal. You want to save some time for rebuttal? I'll save time for that. All right. Thank you. You don't have to tell us, but what are the plans? I'm sorry? There's the delay. There's no doubt about it. The record shows it. It's there. There must be some plan. You don't plan to keep on indefinitely, I wouldn't think. So what are the plans? The state of the record, Your Honor, this is Madeline Denbo appearing on behalf of the county. The state of the record at this point is that, as you've heard, Judge Mossman has submitted his proposed findings of fact and conclusions of law to the Maui Planning Commission. And the Maui Planning Commission will have a hearing in June to either adopt his proposals or do whatever it is in their wisdom that they decide to do with respect to the rescission of the SMA exemption. What about the quality of if you don't do that, and so we can go ahead and schedule more hearings? Now, that's not a part of the record, but either was said or not said. The issue about what kind of evidence comes in at the contested case hearing, it's true. No, I mean scheduling additional hearings. Right, and that's what I'm trying to point out, if you will allow me. That issue is no longer in play. It is true that if evidence is excluded by the hearing officer during the contested case, there can be a request made to the Planning Commission to hear additional evidence. That request has not been made and will not be made. So that issue has gone by. That was done at the time when the judge was saying, well, let's exclude this evidence or let's not hear this evidence. So that argument is no longer in play because no one is requesting the Planning Commission to reopen. So it's true that that was said, but it's not anything that came to pass. And if I could, I'd like to explain that all of Mr. Fassbinder's cases are pre-deprivation cases. This is not a pre-deprivation matter. And I'll refer. What is it then? If it's not pre-deprivation, what is it? Well, if I could explain, if you look at Judge Mossman's order on page 12, and if you look at the complaint that was filed by the appellants here on paragraph 24, and the county's motion to dismiss that was filed on page 2, that was filed in August. You're giving us a lot of things to look at. I know. I'm just kind of giving you that brief information because what I'm going to say now is to explain that this was not an ordinary building permit that was issued. This was something called a plan review waiver permit. Which was already granted to the Hollins. And now this process is taking away that. No. That's why I'd like to explain because it is something you probably haven't seen before. As far as I can tell, it's pretty unique to Maui County. What happens is an architect will certify that we will meet all the county requirements before occupancy. So don't bother going through this and reviewing this plan, county. Just take the plan. Let us go ahead and build. Issue an immediate building permit. So a building permit is issued the same day, but it's a conditional building permit. It's not the normal building permit. It's a conditional building permit. We call it plan review waiver. In other words, we're waiving reviewing the plans. That building permit comes with a statement by the owner saying, I will not occupy until all the requirements of the county and the state and the federal government have been met. So that's why the issues about the shoreline certification and the issue about the shoreline management area permit, which is the most important one in this instance. That's the Coastal Zone Management Act of the State of Hawaii. And the State of Hawaii has, in its wisdom, said that the Maui Planning Commission would be the entity to determine whether or not an SMA permit should be granted for oceanfront development and what conditions, if any, should be placed on it. So you're representing to us that an ocean permit was never granted to the Hollins. What was granted to the Hollins was an exemption from that permit. Okay. So the exemption was granted to the Hollins. That meant they didn't have to comply with all of the normal requirements. Is that correct? Not exactly, because that exemption is subject to appeal. That's what happened. The intervenors came in and appealed the exemption. Yes. Within a timely manner. So the exemption is made by the director. Is there a time frame within which the intervenors had to challenge? Within ten days after they received notice of the action of the director. And so once the intervenors challenged it, did the city and county revoke the waiver? What happened was the intervenors came in and they said there are three houses on this condominium, this horizontal condominium. The state law exempts a single family residence not part of a larger development. Okay. My question just is once the intervenors came in and challenged, did the county then say the exemption is no longer valid?  Yes or no? Yes, it did. And the reason that they did that is because once the Office of Corporation Counsel looked at the law and looked at the exemption that had been granted, the Office of Corporation Counsel said, you know, this law does not mean three houses. It just means one house. And therefore, the intervenors essentially in the legal argument that they're making are correct. And so we're advising the planning director that this is not, this exemption should not have been granted. Isn't there some kind of a stopple theory once you've granted a waiver that you can't just go back and say, oops, we're wrong once people have relied upon your granting of the waiver? When I say your, I mean the county. Well, in this case, of course, there wasn't any reliance because it was timely appeal within the ten days so that there was no reliance on the granting of the waiver because the appellate period came up. So you're saying that the waiver was granted and then within ten days there was, the waiver was disallowed? Appealed by the. No, but what period of time elapsed between the time the waiver was granted and the time it was disallowed by the county? The waiver was granted, there were several waivers in the December, January timeframe. What year? 2000 and 2001. And when did the city notify the Hollins that they were reneging on that grant? The appeal was filed right after that, ten days later. And then as the appellate process moved forward, the opinion of Corporation Council was dated August 8, 2001. What year? And was there a stay or anything in terms of them not being allowed to build or proceed with building plans during that interim? They did not, as far as I am aware. No one made an allegation that they continued with the building permit plans during that period because everybody realizes that the appeal could go either way. And there are some pretty strong cases, and I'd like to just cite the court to a very recent Kauai Supreme Court case about special management area permits. It's called Morgue v. Planning Department, County of Kauai, and that site is found at 86 Pacific 3rd, 982. Was that in your brief? It just came down March 24, 2004, so no. Can you give us the citation so we can get it? Sure, 86 Pacific 3rd. Could you write it down and provide it to the clerk? We have a process where if a case comes down, you give it to us in a letter. Yes, I understand. It's difficult for us to deal with it when we get it right now. So if you would write that down and give it to the clerk, we will look at it at some point. I'd be happy to do that. I'd be happy to do that. Now, the complainants alleged that their residence was almost completed, and they're the only one to have the exemption revoked. Are those statements true? No, everyone's exemption in that condominium was revoked. So how many was that? It's a three-unit horizontal condominium. But theirs was the only one that was almost completed? Yes, because when you go ahead and build on your plan review waiver, of course you're taking the risk that you won't be able to satisfy everything at the end of it. They had decided to take that risk and go ahead and build. So they cannot occupy, and this is a signed document, will not occupy until all the requirements are met. Now, the shoreline certification requirement has never been met. This is completely aside from any appeal or anything else. So even if this case should be decided tomorrow and the SMA exemption were for some reason reinstated, they still couldn't occupy because they don't have a shoreline certification, which gives you the location of the shoreline and how far back you need to be from the shoreline. Now, it's pretty clear in these real estate ventures that time is important. It's not a small factor. And you've taken an awfully long time to resolve this matter. Do you have any explanation for that? Yes, I believe that the desire to do the plan review waiver, if I could, that's a desire to speed up the process because you start building, and then hopefully you can do it along the way. No, but I mean once you revoked it, you've taken a long time to resolve the issue. We revoked the shoreline management area exemption. Is that what you're referring to? Yes. Why have you taken so long? The reason that this matter has taken so long in terms of the contested case is because the issues that were brought forward that Mr. Foster alluded to earlier about the supposed conspiracy to extract property and so forth, those, despite the motion of the county, we had taken the position, let's just do this contested case as your normal contested case. When you get to circuit court, you can bring in all these constitutional issues and so forth, but the planning commission really doesn't have authority to hear all of this. That's in the circuit court. So let's just speed this thing up and go through. We made motions, and those were denied. And the hearing took a long time because it was an attempt, and a successful attempt, to bring in information about what the mayor said to so-and-so, and then because there were allegations of criminal acts. But major trials don't take that long. They take as long as the hearing, contested case hearing. As long as this process has been. Right. And that's what I'm saying, is because the criminal allegations that were made, in my opinion, unnecessarily at this contested case level, required special counsel to be hired for the various people who were accused of having done this criminal extortion. So it did take longer than the normal amount of time. But it is a lengthy proceeding, the contested case, because there is the attempt on the part of the county to provide sufficient due process. There is discovery, which was taken advantage of. There were depositions taken by the appellant. And the other, don't forget, there are three property owners. So that kind of made it longer anyway, because you've got three property owners. Plus you had a fourth person who had an agreement to purchase one of the properties. So there were five attorneys and their clients involved in the matter, including the county, the three property owners, and the one person who was attempting to purchase. So, of course, everybody was taking depositions, and that whole discovery process took quite a lengthy time. But three years? Three years and we're still not done? Well, we are done. I mean, everything's done with the contested case. Except the commission hasn't acted. Right. And they will act in June. Well, I have a question I'd like to ask you and give you a chance to reply, because the district court relied on younger abstention. Now, as I look at the cases, I may be wrong, but this is not appropriate for younger because that requires a state judicial proceeding. You are conducting a county judicial proceeding. And there's nothing that I can see that says a county is entitled to that federal deference. Do you have any case that says a federal court should abstain from a county? I do, Your Honor. What is it? Well, all right. Is that in your brief? Yes, it is. All right. Well, that's fine. That case says basically you have your administrative process, and then if you don't get to the constitutional issues until you get to state judicial review, that's okay. No, no, the question is do you abstain while it's before a county board? Yes. And that deals with that? Yes. Okay. What language do you rely upon in that opinion that says county? I thought that was the Ohio Civil Rights Commission, which would be a state agency. A state agency as opposed to a county agency. I'm sorry, I thought you meant a state agency. That's a big difference. A county is not a state. That's an important difference. In this case, the county is acting pursuant to state authorization. Oh, no, but you're not a state. You're just a county. But in this particular case, the county planning commission has been assigned by the federal government. Well, of course. Counties get set up by state legislators. No, no, no. That's the regular thing. A county wouldn't exist if the state didn't authorize it. I didn't mean that they were set up by the state. Of course they are. Of course they are. But if you can give me one case where a federal cause is obtained from a county proceeding, I'd be interested. We did cite cases in our brief, and I'm sorry, I don't know of any. If I could just explain. I'll look at your brief again, but I just wanted to give you that chance. I just want to explain to you that I missed. And I may be wrong, but I don't know of any. Well, if I could correct what I think might be a misapprehension. In this case, I'm not saying that the county is set up by the state. I'm saying that the state CZM, the State Coastal Zone Management Act, assigns its enforcement and the issuance of permits to the county planning commission. Well, that's fine. And they act pursuant to state law and pursuant to state rule. Well, of course they do that. But the question is, should a federal court abstain in deference to what is a state judicial proceeding? This is not a state judicial proceeding. That's what Younger is about. I believe that that's correct. Initially, that's what Younger was about, but it extended to administrative proceedings. Well, find the case. And we did cite those cases. And you're raising the question, is administrative state different than administrative county? And I'm saying that in this case, the county is acting as an arm of the state. It's an argument. It's worth making. May not be right. That's certainly true. All right, Kelsey, you've exceeded your time. We understand your argument. Thank you. Thank you. Rebuttal, please. Would you go first to the point that the end is here, June is the date? There is no guarantee of that at all. We haven't received anything. Is it set? Not that I know of. We haven't received anything that said it was set. Is there anything in the record show that it's set for June, Counsel? No. Did you represent when you argued that it's over in June? It will be set for June, yes. No, you said it was set for June, and the end will come. I did. I didn't inform by the point that it was set here. It was only set in June. So in going, that means it's not set for June, doesn't it? Yes. So your statement that it's set for June is just not accurate, is it? It hasn't yet been posted for June, but in the internal work we do with the planning department, that's going to be the point. But don't we have to rely on the public record? Can we rely on what somebody said maybe they're going to do when we're looking at the case to review it? Don't we have to rely on the record? You tell me yes or no. Yes. Do we have a record that shows it? It shows that it's going to be for June. That the end is here in June because the question is delay. You said to us, and I was ready to accept it, that all right, so it's delay. There has been a delay. It has been a long time, but it's over. June is the date. And then when Counsel asked him to go straight to that point, he said no, and now your answer is no, that's right. It hasn't been said. There's just been some talk about maybe it will be said. Now is that, am I accurate? If I'm not, if I'm inaccurate, you tell me. What I represented before, I can see how you misunderstand what I said and I misquote. I didn't misunderstand what you said. Okay, because I understood what you said. When I said it's set for June, in my mind, that's clearly going to happen. It's posted six days ahead. It's officially posted. It isn't written. So it won't be posted until six days ahead of the actual hearing. But I'm informed of that. I understand. All right. I understand. I understand the direction. So you go ahead. Thank you. I just need to point out that this is deja vu all over again. If you look at the record, we have the transcript of the oral argument in front of Judge Gilmore. And just coincidentally, apparently, one week before the hearing, the county set the date of September, whatever it was, for the contested case hearing and represented to Judge Gilmore that that would happen in just a few months. And, of course, that wasn't quite right, as it all turned out to be. And there's no reason to believe it will be quite right here either. And even if it were quite right, once again, there is no deadline for how long the planning commission can take to make their decision. There is nothing to prevent the intervener in this case from asking the planning commission to go back and have more hearings held. This can and is very likely to go on for a great deal longer. Even if it doesn't, the intervener's appeal of the SMA exemptions was held by the hearing officer to be more appropriately done after this first contested case hearing. The intervener's objection made many more specific factual allegations and goes on and on. And that hearing, at the rate that this one took, could go on for easily twice as long because there's about four times as many issues. There is no evidence in the record, nor could there be, because there's no evidence out there in the world, that we're anywhere near done with this. June is not the day. We were misled so many times here at the hearing in July 5, 2002. The county's position was that the planning department's contested case hearing could decide issues of manifest injustice, which included issues of constitutionality, issues of everything, essentially, that we're talking about. They took that position. They stated the hearing will be conducted in that order on October 14 through the 17th of 2002. But later on, the county also took the position in another brief that it was clear that the petitioner in the contested case may raise constitutional issues on review. They argued it repeatedly. We've got a red light on. Just tell us what you think the bottom line of this case should be. What should, in your view, the court's ruling be? The court's ruling should be that there's been observation of procedural due process. The process is clearly inadequate to give a timely relief. It could go on forever, so the court has to step in. The court should say that we've raised credible issues, that reasonable facts might be inferred to be found in the future that would support our claim that the mayor acted for political motivation. We can't say that on this record. How can we say that on this record? Well, you just have to look at our complaint. And the question with 12B-6 is not just what's in the complaint but what other facts might come out if we were allowed to go through discovery. We didn't even get to go through discovery. But I can tell you that it would be a rare court that would make a factual finding. I'm not saying to make a factual finding that it happened, but just to point out that Judge Gilmour sort of lacked imagination, if you will. She looked at the cases before her on the day it was before, and on the day it was before there were representations to her as to when it would conclude. Right, but I'm shifting over to the whole topic of the mayor, whether or not he acted illegally. We allege in our complaint a conspiracy to violate the Hollands' constitutional rights, and that should not have been thrown out. Maybe we should have had to rewrite it with more specific facts. That's a possibility, but it should not have been thrown out. Or do discovery so you can prove it. Or do discovery so we can prove it. So that the record is there. Which we now can prove. Counselor, you were going to get a citation for me that says that delay excuses the ripeness issue. Well, it goes sort of beyond that. I mean, it says essentially that if the harm that happens to you happens as soon as they make the decision, they have to – that's a final decision. And so the harm that happened to the Hollands, they had actually – the Hollands' house has been reassessed by the county as an occupiable, livable house. They are paying taxes as though it were an occupiable, livable house. I understand your argument. Thank you, Counselor. You've exceeded your time. The case just argued is submitted for decision by the court. The next case on calendar for argument is United States v. Boucher. Thank you. Thank you, Counselor.
judges: Farris, Noonan, Rawlinson